UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
EVA DELLA CROCE,

                Plaintiff,

      - against -

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
---------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-440 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Eva Della Croce ("Della Croce") brings this action against defendant Nancy A.

Berryhill,[1] Acting Commissioner of the Social Security Administration (the "Commissioner").

Della Croce seeks review of the determination of an administrative law judge ("ALJ") that she is

not entitled to disability insurance benefits, pursuant to 42 U.S.C. § 405(g).  (Compl. (Doc. No.

1) at 1–3.)  Della Croce requests that this Court reverse the ALJ's decision and find that she is

entitled to disability insurance benefits on the grounds that the decision was erroneous, not

supported by substantial evidence on the record, and contrary to the law.  (Compl. at 2–3.)  Both

Della Croce and the Commissioner have moved for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c).  (Pl.'s Mot. (Doc. No. 12); Def.'s Mot. (Doc. No. 14).)

For the reasons set forth below, Della Croce's motion is granted and the Commissioner's motion

is denied.

---

[1] This action was originally brought against Carolyn W. Colvin in her capacity as then-Acting Commissioner.  The
current Acting Commissioner, Nancy A. Berryhill, has been automatically substituted.  *See* Fed. R. Civ. P. 25(d).

# BACKGROUND

## I.     Procedural History

Plaintiff Eva Della Croce filed an application for disability insurance benefits on December 24, 2013.  (R. 133– 42.)  Her application was denied on April 10, 2014 based on a determination that her condition would not prevent her from performing her past work as a receptionist.  (*Id.* at 69, 80.)  Plaintiff requested an administrative hearing, which took place via video conference on October 29, 2015, before ALJ Janet McEneaney.  (*Id.* at 88–89, 28–61.)  Della Croce was represented at the hearing by counsel, Max Leifer.  She testified, as did vocational expert, Gerald Belichick.  (*Id.* at 30.)  The ALJ denied plaintiff's claim in a decision dated December 3, 2015, on the grounds that plaintiff had engaged in substantial gainful activity after the alleged onset date of her disability and was therefore not disabled.  (*Id.* at 20–23.)  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied plaintiff's request for review on January 4, 2017.  (*Id.* at 1–5.)  On January 26, 2017, Della Croce filed the instant action.  (Compl.)

## II.     Administrative Record

Eva Della Croce was born in 1958 and was fifty-seven years old at the time of the ALJ's decision.  (Admin. R. 33.)  She is a high school graduate and lives in a two-story home with her husband.  (*Id.* at 33–34.)  Della Croce has been diagnosed with multiple sclerosis ("MS").  (*Id.* at 268–69, 276, 338–41, 349–50, 352–53, 376.)  The nature of Della Croce's complaint, as detailed in her initial application, is that she suffers from "back problems, legs, arms, knees, muscles, all over body ache," as well as fatigue.  (*Id.* at 136.)

According to Della Croce, she suffers from pain in her legs, which makes her feel fidgety and forces her to move constantly.  (*Id.* at 229.)  She has trouble standing for too long, and

standing causes her ankles to swell.  (*Id.*)  However, the pain in her lower back also makes it difficult to sit for long periods of time.  (*Id.*)  Carrying things causes pain in her arms and tightness in her hands.  (*Id.*)  She needs to urinate hourly, which interrupts her sleep schedule and causes fatigue.  (*Id.*)

Della Croce states that due to her condition, she cannot cook or perform household chores, and she has trouble using the stairs in her home most days.  (*Id.* at 34, 193–94.)  She can reach above her head, but it causes her pain to do so.  (*Id.* at 44.)  She is able to go shopping a few times a month, mostly for food and clothing.  (*Id.* at 195.)  She used to go on walks for pleasure two to three times a week but claims that she no longer can due to her condition.  (*Id.*)  Her social interactions are limited to telephone conversations and having people visit her, as she no longer goes out.  (*Id.* at 196.)

As part of her treatment for MS, Della Croce self-administers an injection of either Plegridy or Avonex twice per month.  (*Id.* at 38, 229, 339.)  These injections have the side effect of causing flu-like symptoms for between twenty-four and forty-eight hours, sometimes rendering her unable to work.  (*Id.* at 38.)  Plaintiff is also currently taking seven other medications in addition to these injections.[2]  (*Id.* at 228–29, 339.)

Della Croce worked as a trader at Morgan Stanley from 1983 through 2009 and as a receptionist at Matthew Funeral Homes and Cremation Services, Inc., from 2009 until at least the time of her hearing in 2015.[3]  (*Id.* at 34–35, 135.)  Her responsibilities as a funeral home receptionist included greeting, ushering, and directing guests, making arrangements for funerals,

---

[2] These medications are: losartan, atovastatin, nifedipine, hydrochlorothiazide, coenzyme Q-10, chloecalciferol, and Bayer Aspirin.  (Admin. R. at 229.)
[3] Although her disability insurance benefits application indicates that Della Croce stopped working in May of 2013, her earnings records and her testimony show that she continued working after that date. (Admin. R. 34–35, 135, 151.)

ordering supplies, preparing paperwork, answering the telephone, and moving chairs and flowers. (*Id.* at 35, 201.) Her work also involved one to three hours of walking, one to three hours of standing, and six to seven hours of sitting each day. (*Id.* at 201.) Furthermore, she was required to handle or grasp larger objects for one to two hours and handle smaller objects for four to five hours each day. (*Id.*) The heaviest items she was required to lift weighed twenty pounds, but more frequently, the items she lifted weighed less than ten pounds. (*Id.*)

Della Croce worked eight hours a day at a rate of $17.50 per hour. (*Id.* at 35.) When Della Croce started at the funeral home, she worked for four days a week, but by the time of the hearing, she was down to two, and sometimes only one, day a week due to her condition. (*Id.* at 49.) She earned $16,959.48 in 2013 and $13,461.93 in 2014. (*Id.* at 151.)

Della Croce indicated that her employer accommodates her MS by allowing her to take frequent breaks. (*Id.* at 230.) Della Croce testified that during her eight-hour workday, she takes around twenty five-to-fifteen minute breaks and has to go to the bathroom every sixty to ninety minutes. (*Id.* at 41–42, 51.) Due to her fatigue, she sometimes naps in an empty room during the workday, although this is not permitted. (*Id.* at 229.) Furthermore, she is allowed to leave work if she does not feel well enough as long as she is able to find someone to cover her shift. (*Id.* at 230.) In addition, she is currently on the payroll for three days a week but only works two, or fewer, days a week. (*Id.*)

### a. Medical Evidence Prior to Della Croce's December 24, 2013 Disability Insurance Benefits Application

In 2004, Della Croce had an MRI of her spine at the request of Dr. Michelle Cammarata,[4] which revealed that she had a mild diffuse disc bulge at L3-L4, and mild focal irregularity at the

---

[4] Dr. Cammarata's relationship to Della Croce is not contained in the record.

superior endplate of L3 and inferior endplate of L1, which is consistent with early degenerative changes and development of Schmorl's nodes.[5]  (*Id.* at 279–80.)

On February 11, 2005, plaintiff received a vestibular assessment following a referral from Dr. Alexander Gecht.  (*Id.* at 262.)  The test revealed no evidence of significant peripheral or central vestibular dysfunction.  (*Id.* at 263.)

On January 16, 2007, Della Croce received MRI scans of the brain because she had been experiencing severe dizziness since January 11, 2007.  (*Id.* at 268, 388.)  The MRI found multiple lesions in the periventricular white matter that could be representative of primary demyelinating diseases such as MS.  (*Id.* at 268.)

Della Croce had a follow-up consultation and neurological evaluation with Dr. Ludmila Feldman on January 23, 2007.  (*Id.* at 388–90.)  During the consultation, Della Croce claimed that she had been experiencing dizziness for five or six years at a frequency of every two to three months.  (*Id.* at 388.)  A subsequent MRI of the lumbar spine ordered by Dr. Feldman on January 25, 2007, revealed that she had partial disc desiccation and evidence of spondylosis on her L1-2, L2-3, L3-4, L4-5, and L5-S1 discs.  (*Id.* at 267.)

On August 6, 2012, Della Croce's neurologist, Dr. Allan Perel, stated that due to plaintiff's MS, she required access to a motorized scooter or wheelchair.  (*Id.* at 376.)  On December 5, 2012, plaintiff received an MRI of her lumbar spine at the request of Dr. Perel, which noted mild degenerative changes of the lumbar spine with diffuse disc bulges L1-2 through L4-5, disc desiccation of L1-2, and a mild straightening of the normal lordotic curvature. (*Id.* at 276–77.)

---

[5] A Schmorl's node is a protrusion of a spinal disc's soft tissue into the bony disuse of the adjacent vertebrae. *Medical Definition of Schmorl's Node*, MedicineNet.com, https://www.medicinenet.com/script/main/art.asp?articlekey=14007 (last updated May 13, 2016).

A brain MRI taken on August 6, 2013, revealed findings that were also consistent with the clinical impression of demyelinating disease. (*Id.* at 352–53.) However, although her white matter lesions were compatible with her MS diagnosis, the reviewing doctors also indicated that other etiologies such as chronic ischemic change should be considered. (*Id.* at 353.)

### b. Medical Evidence After Della Croce's December 24, 2013 Disability Insurance Benefits Application

On March 21, 2014, Della Croce was examined by Dr. Mahendra Misra from the New York State Office of Temporary Disability Assistance. (*Id.* at 338.) Della Croce described her chief complaint to Dr. Misra as pain in the lower back, calves, and right hand. (*Id.*) Misra's report noted Della Croce's past medical history of MS, hypertension, psychiatric problems, and frequent urination. (*Id.* at 339.) He also found that Della Croce had restrictions in her thoracic/lumbar spine movements as well as bilateral restriction of her lower limbs. (*Id.* at 340.) Misra diagnosed Della Croce with MS, cervical spondylosis, lumbosacral spondylosis, calf spasms, restrictions of the movements in the fourth and fifth finger of her right hand, and urinary bladder dysfunction. (*Id.* at 341.)

Della Croce received a follow-up MRI brain scan on August 6, 2014, that provided data consistent with the previous findings of MS. (*Id.* at 349–50.) Della Croce received physical therapy treatment for her MS at One on One Physical Therapy on March 30, 2015; April 6, 22, and 29, 2015; and June 1, 2015. (*Id.* at 392–98.)

Dr. Perel prepared an assessment of Della Croce's ability to work, dated September 21, 2015. (*Id.* at 400–03.) Based on her history of MS, MRI results, and physical examination, Dr. Perel concluded that Della Croce could lift up to twenty pounds, but was limited in her ability to push and pull with her upper extremities. (*Id.* at 400–01.) He also found that she could stand for

two hours and sit for less than six hours during an eight-hour workday, but that she must periodically alternate between sitting and standing to relieve pain or discomfort. (*Id.*) Dr. Perel also reported that Della Croce could occasionally climb or balance but could never kneel, crouch, crawl, or stoop, and that her reach in all directions was limited. (*Id.* at 401–02.)

### c. Vocational Expert Evaluations and Testimony

On September 14, 2015, Della Croce received an evaluation from vocational consultant Lynn Mizzy Jonas at the request of her attorney. (*Id.* at 228.) After noting the plaintiff's work condition and responsibilities, Jonas administered various tests of Della Croce's skills and abilities. (*Id.* at 230.) In the Purdue Pegboard test, which measures gross manual and fingertip dexterity, Della Croce scored in the lowest percentile with either hand individually as well as with both hands used simultaneously. (*Id.*) In a series of employee aptitude tests designed to measure verbal comprehension, numerical ability, and visual speed and accuracy, Della Croce performed well below average, scoring from as low as the fifth to as high as the thirtieth percentile. (*Id.* at 231–32.) Based on Della Croce's limitations as described by Dr. Perel, Jonas concluded that Della Croce would not be able to maintain a position in a competitive work environment without the forgiving work atmosphere of her current part-time job. (*Id.* at 235.)

Vocational expert Gerald Belichick testified during Della Croce's hearing. (*Id.* at 51–58.) Belichick stated that Della Croce's job as a securities trader (DOT Code No. 210.382-062) is considered a skilled occupation with sedentary exertion levels, and her current job at the funeral home most resembles the classification of "greeter" (DOT Code No. 237.367-038) which is a semi-skilled job with a light exertion level. (*Id.* at 54.)

The ALJ then asked Belichick a series of hypothetical questions. (*Id.* at 55–58.) First the ALJ asked if there were any jobs in the national economy for a person of Della Croce's age,

education, and work experience, who is able to perform light work, but is unable to climb

ladders, ropes, or scaffolds, unable to kneel, crouch, crawl, or reach overhead, and only

occasionally able to push, pull, or climb stairs or ramps. (*Id.* at 55.) In response, Belichick

testified that under these conditions, Della Croce's past job as a greeter could be performed. (*Id.*

at 55–56.)

Next, the ALJ modified the first hypothetical by adding the restriction that the person can

only work three days a week. (*Id.* at 56.) Belichick responded that this would eliminate not only

Della Croce's past work, but also all other work. (*Id.* at 56–57.) The ALJ then asked if there

were jobs available to someone who, in addition to the limitations set forth in the first

hypothetical, required frequent bathroom breaks and the option to alternate between sitting and

standing. (*Id.* at 57.) Belichick responded that, because the restriction would interfere with work

productivity, it eliminates all work. (*Id.*) Lastly, the ALJ asked if there were any jobs available

to someone who, in addition to the limitations set forth in the first hypothetical, required two to

four days off every month. (*Id.* at 57–58.) Belichick testified that there are no such jobs. (*Id.* at

58.)

## LEGAL STANDARDS

### I.    Standard of Review

The Court does not make an independent determination about whether a claimant is

disabled when reviewing the final determination of the Commissioner. *See Schaal v. Apfel*, 134

F.3d 496, 501 (2d Cir. 1998). Rather, the Court "may set aside the Commissioner's

determination that a claimant is not disabled only if the [ALJ's] factual findings are not

supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*,

221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "'[S]ubstantial evidence' is

'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted) (internal quotation marks omitted). "If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld." *Stemmerman v. Colvin*, No. 13-CV-241 (SLT), 2014 WL 4161964, at *6 (E.D.N.Y. Aug. 19, 2014) (citing 42 U.S.C. § 405(g)). "This deferential standard of review does not apply, however, to the ALJ's legal conclusions." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 342 (E.D.N.Y. 2010). Rather, "[w]here an error of law has been made that might have affected the disposition of the case…[an ALJ's] [f]ailure to apply the correct legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (citation omitted) (internal quotation marks omitted).

## II.    Eligibility Standard for Disability Insurance Benefits

To establish eligibility for disability insurance benefits, an applicant must produce medical and other evidence of his disability. *See* 42 U.S.C. § 423(d)(5)(A). To be found disabled, the claimant must have been unable to work due to a physical or mental impairment resulting from "anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(1)(A). This impairment must have lasted or be expected to last for a continuous period of not less than twelve months. *Id.*; *see also Barnhart v. Walton*, 535 U.S. 212, 223 (2002). Further, the claimant's medically determinable impairment must have been of such severity that

he is unable to do his previous work or, considering his age, education, and work experience, he

could not have engaged in any other kind of substantial gainful work that exists in the national

economy. *See* 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, the

Commissioner engages in the following five-step analysis:

> [1] First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity.

> [2] If he is not, the Commissioner next considers whether the claimant has a
> "severe impairment" which significantly limits his physical or mental ability
> to do basic work activities.

> [3] If the claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment which is
> listed in Appendix 1 of the regulations. If the claimant has such an
> impairment, the Commissioner will consider him *per se* disabled.

> [4] Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.

> [5] Finally, if the claimant is unable to perform his past work, the
> Commissioner then determines whether there is other work which the
> claimant could perform.

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *DeChirico v. Callahan*, 134 F.3d

1177, 1179–80 (2d Cir. 1998)); *see also Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); 20

C.F.R. § 404.1520. The claimant has the burden of proof for the first four steps of the analysis,

but the burden shifts to the Commissioner for the fifth step. *See Talavera*, 697 F.3d at 151.

## DISCUSSION

At step one of the sequential evaluation, the ALJ must consider a claimant's work

activity during the period of alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is

working and the work is determined to be substantial gainful activity, a claimant will be found

not disabled regardless of her age, education, or work experience. 20 C.F.R. § 404.1520(b). In

determining whether work constitutes substantial gainful activity, the primary consideration is the claimant's earnings. 20 C.F.R. § 404.1574(a)(1). Earnings in excess of agency-established thresholds create the presumption that the claimant is engaged in substantial gainful activity. *See Storyk v. Sec'y of Health Educ., & Welfare*, 462 F. Supp. 152, 157–58 (S.D.N.Y. 1978). However, if the claimant's work is done under special conditions, it may not be considered substantial gainful activity. 20 C.F.R. § 404.1573(c); *see also Moran v. Astrue*, 569 F.3d 108, 114 (2d Cir. 2009) ("[A] claimant who works and earns above [the agency-set] threshold amount can nonetheless be properly classified as disabled if that claimant performed his or her work under 'special conditions.'").

Being "allowed to work irregular hours or take frequent rest periods" qualifies as a special condition under 20 C.F.R. § 404.1573(c). The plaintiff bears the burden of establishing that despite surpassing the established levels of earnings, she was not engaged in substantial gainful activity. *See Figueroa-Plumey v. Astrue*, 764 F. Supp. 2d 646, 651 (S.D.N.Y. 2011) (citing 20 C.F.R. § 404.1512(a)).

Here, it is undisputed that Della Croce's earnings from her job at the funeral home exceeded the threshold amounts set by the Social Security Administration. The threshold levels of earnings to show substantial gainful activity for a non-blind individual in 2013 and 2014 were $1040 a month and $1070 a month, respectively. *See Substantial Gainful Activity*, Soc. Sec. Admin., http://www.ssa.gov/oact/cola/sga.html (last visited August 15, 2018). Della Croce earned $16,959.48 in 2013 and $13,461.93 in 2014, surpassing the applicable monthly threshold amounts.[6] (Admin. R. 151.)

---

[6] The ALJ also estimated that Della Croce earned $12,320 in 2015 based on her testimony that she worked for eight hours a day, two days a week, at a rate of $17.50 per hour. (Admin. R. 23.) However, this number is not reflected anywhere else in the record, and does not appear to take into account Della Croce's testimony that she sometimes works less than two days a week.

Based on these earnings alone, and with no additional discussion, the ALJ concluded that Della Croce's work at the funeral home constituted substantial gainful activity. (*Id.* at 22–23.) Accordingly, the ALJ found that Della Croce was not disabled at step one of the analysis. Della Croce argues that the ALJ erred because she failed to consider special working conditions provided to Della Croce in determining whether her work constituted substantial gainful activity. The Court agrees.

"Among the ALJ's legal obligations is the duty to adequately explain his reasoning in making the findings on which his ultimate decision rests, and in doing so [he] must address all pertinent evidence." *Klemens v. Berryhill*, 703 F. App'x 35, 36 (2d Cir. 2017) (quoting *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)). "An ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id.* (internal quotation marks omitted).

Here, although the Court does not decide whether Della Croce worked under special conditions, the record contains substantial evidence that may support such a finding. Della Croce testified at the hearing that her employer allows her to take twenty breaks per day, each lasting five to fifteen minutes. (Admin. R. 41–42.) In addition, she is able to leave work if she is feeling ill, as long as she can find someone to cover for her. (*Id.* at 230.) Della Croce also sometimes naps during work, and although this is not permitted by her employer, there is no indication that she has faced adverse consequences. (*Id.* at 229.) She is on the payroll at the funeral home for three days a week, but only actually works one or two days. (*Id.* at 230.)

The ALJ did not address in her decision any of this evidence that may suggest that Della Croce's work was performed under special conditions. This evidence was relevant to the decision, as 20 C.F.R. § 404.1573(c) explains that the existence of special conditions may affect

the substantial gainful activity determination.  *See Glessing v. Comm'r of Soc. Sec. Admin.*, 725

F. App'x 48, 51 (2d Cir. 2018) (summary order) (affirming District Court's remand where the

ALJ did not determine whether claimant's prior work was substantial gainful activity in light of

special conditions under which it was performed); *Shepard v. Astrue*, No. 10-CV-323 (CR)

(JMC), 2011 WL 5419852, at *7 (D. Vt. Oct. 12, 2011) (remanding where ALJ found that the

claimant was engaged in substantial gainful activity without addressing vocational expert's

testimony that claimant's work was performed in an "accommodated situation"), *report and

recommendation adopted*, No. 10-CV-323 (CR) (JMC), 2011 WL 5443064 (D. Vt. Nov. 9,

2011).  Although the ALJ might have considered this evidence in finding that Della Croce's

work was substantial gainful activity, without any explicit discussion of the issue, this Court

cannot so conclude.  Therefore, this case must be remanded.

The ALJ is directed on remand to consider the accommodations Della Croce was given at

her workplace, determine if those conditions constitute "special conditions," and if so, determine

whether her work was substantial gainful activity.

## CONCLUSION

Accordingly, for the reasons explained herein, the Commissioner's motion for judgment on the pleadings (Doc. No. 14) is denied, Della Croce's motion for judgment on the pleadings (Doc. No. 12) is granted, and the matter is remanded to the Commissioner for further proceedings consistent with this opinion. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated:  Brooklyn, New York
       September 26, 2018

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge